UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA | : |
| | : |
| | : Criminal Case: 1:19-mj-00178 (DAR) |
| v. | : |
| | : |
| | : |
| MICHAEL THOMAS CATINELLA | : |
| | : |

**UNITED STATES MEMORANDUM AND
PROFFER IN SUPPORT OF PRETRIAL DETENTION**

The United States of America, through its attorney, the United States Attorney for the District of Columbia, respectfully moves this Court to issue an Order detaining Michael Thomas Catinella (hereinafter "defendant"), pending trial pursuant to 18 U.S.C. §§ 3142(f)(1)(A), 3142(f)(2)(A).

**Proffer of Factual Background**

If called to testify, the government anticipates its witnesses would present the following evidence. On or about June 22, 2019, the United States Secret Service (USSS) provided the United States Capitol Police (USCP) with screenshots of several threatening Twitter posts from Twitter user "@Rex_Corso" between June 21, 2019 and June 22, 2019.

- "@AjitPaiFCC I am going to murder police officers starting tomorrow. Every hour I don't have my wife someone dies."

- "This is not a drill."

- "This is not phony. This is a real threat."

1

- "@FBI NASAGov @realDonaldTrump @AjitPaiFcc @CIA I want my wife tonight or I am going to stayurdering [sic] police officers tomorrow. 1 for every black man killed up to now."

- "@GOP @realDonaldTrump "I'm going to kill every fucking cop and pig I see tomorrow."

- "If I do not have my wife tonight I will begin stabbing police officers in the back. Steal their guns and shoot up the Capitol."

- "I am going to start killing white police officers every hour on the hour until my wife @ArianaGrande is brought to me. Starting tomorrow morning."

- "You probably think I am joking or will talk myself out of it. I won't. I told you this ends tonight."

- "@AjitPaiFCC I also have my taser. I can subdue am officer silently, steal their gun, and shoot up the capitol."

- "@BET @Nickelodeon I am going to start killing white police officers every hour on the hour until my wife @ArianaGrande is brought to me. Starting tomorrow morning."

Twitter permits its users to direct their posts at other users by using the "@" symbol, and in doing so a user can expose their post to the other user's Twitter followers. Defendant directed his posts to the following accounts:

- @FBI – the public account of the Federal Bureau of Investigation

- @NSAGov – the public account of the National Security Agency

- @realDonaldTrump – the public account of President Donald Trump

2

- @AjitPaiFcc – the public account of Ajit Pai, Chairman of the Federal Communications Commission

- @CIA – the public account of the Central Intelligence Agency

- @ArianaGrande – the public account of Ariana Grande

- @BET – the public account of the Black Entertainment Television network

- @Nickelodeon – the public account of the Nickelodeon, USA television network

- @GOP – the public account of the Republican National Committee

Each of the aforementioned accounts have substantial numbers of Twitter users following the account, some in the tens of millions of followers. Thus, by directing his posts at the aforementioned accounts, defendant potentially exposed his threats to millions of individuals.

Through further investigation and subscriber information received from Twitter, defendant was identified as the owner of the "@Rex_Corso" Twitter account. Further investigation also determined that defendant possessed a cell phone with a subscribed number ending in -6510. Cell phone tower records for that phone number showed that on June 21, 2019 at approximately 11:05pm EDT, defendant's phone was in the vicinity of 950 Pennsylvania Avenue, NW, Washington D.C. At 11:16pm EDT, the phone was in the vicinity of 701 7th Street, NW, Washington D.C. Notably, this location data placed defendant's phone within the vicinity of the U.S. Capitol around the time of his threatening Twitter posts, outlined above.

Defendant was subsequently stopped in Arlington, VA, around midday June 22, 2019. At that time, defendant was driving a 2003 silver Toyota Matrix with Arizona tags BZT3313, which was registered to him. In a subsequent court-authorized search of the Toyota Matrix, law enforcement seized several items, including a cell phone with a subscribed phone number ending in in -6510, a laptop, a knife with a 7-inch blade, a small hatchet, a taser, and a lock-picking kit.

After defendant was stopped in Arlington, VA, on June 22, he was taken to a Virginia hospital for a mental health evaluation and later involuntarily committed for a period of 18 days.

On July 10, 2019, defendant was arrested on a warrant issued by the U.S. District Court for the District of Columbia, charging him with violation of 18 U.S.C. § 875(c). Following his arrest, defendant was advised of his *Miranda* rights, waived his rights, and agreed to speak with members of the USCP. During the interview, defendant stated that he came to Washington, D.C. in late May 2019 to visit the U.S. Capitol and attend an Ariana Grande concert. Defendant toured the U.S. Capitol with an Arizona Senator's office on or about June 18, 2019, and he attended an Ariana Grande concert on or about June 21, 2019.

Regarding the threats on Twitter, defendant stated that he was the user of the @Rex_Corso Twitter account and the owner of the cell phone with a subscribed number ending in -6510. Defendant admitted that he posted the aforementioned messages on the @Rex_Corso Twitter account on June 21 and 22, 2019, using his cellular phone, and at the time that he posted the messages, he was located in the District of Columbia in the area of the Capital One Arena (601 F Street NW, Washington, D.C.). Defendant acknowledged that the messages he posted on Twitter were threats. Specifically, regarding one of the threats to police officers, defendant stated that he understood it was a direct threat toward police officers and that it should be taken seriously. Regarding the threats to officers and individuals at the U.S. Capitol, defendant stated that he was frustrated by not receiving responses to prior messages he sent to certain U.S. Congressman and that frustration caused him to make his threats. Regarding the messages to the President, defendant stated that he was frustrated that he had not received a pardon from the President despite his several prior requests for the same. Regarding the messages to Chairman Pai, defendant stated that he had been messaging Chairman Pai regularly for several months with suggestions about how to govern

and was frustrated by the lack of response to his messages. Defendant stated that he was trying to get attention by issuing the threats, and that he did not intend to act on the threats. Defendant stated that he was in a manic state at the time he posted the threats, but noted that he was looking for marijuana around the time he was posting the threats while in the vicinity of the Capital One Arena. Additionally, defendant stated that the method he was referring to in killing police officers was tasing them, taking their gun, and shooting them. Defendant acknowledged that he possessed a taser in his car (the 2003 Toyota Matrix).

Additionally, during the July 10, 2019, interview, USCP reviewed with defendant Twitter messages previously posted by the user @MadGodofOrder (Thomas Michael Catinella). Defendant stated that he was the user of the @MadGodofOrder Twitter account. Defendant reviewed messages from the account, including messages stating "I'm going to take a tomahawk to your faces" and "I'm a serial killer." Defendant admitted to writing the messages and separately admitted that he owned the hatchet taken from his car, which he referred to as a "mini tomahawk." Defendant also described that agents from the Federal Bureau of Investigation (FBI) had previously interviewed him in Arizona, in response to messages posted on his @MadGodofOrder Twitter account.[1]

At the end of the interview on July 10, 2019, defendant was asked if he had any questions. Defendant asked the interviewing officers if it was possible for the officers to arrange a meeting between himself and Chairman Pai. Defendant also stated that "they" (referring to the individuals he was messaging on Twitter) were using "FMRI dream imaging," which defendant described as a "beam that knocks out your frontal lobe and provides dopamine rushes." Defendant stated he

---

[1] FBI Agents interviewed Defendant on February 18, 2019, in response to a Twitter message posted by defendant on the @MadGodofOrder Twitter account stating, "@jack @FBI I have bombs and guns and am going to blow up a building." In that interview, defendant was asked if he knew it was illegal to make such threats, and defendant stated "oh yeah."

5

could feel the use of the beam on his head while he was messaging on Twitter on June 21 and 22, 2019. Defendant also stated, "I swear I am not lying about the FMRI dream imaging."[2]

Also on July 10, 2019, defendant appeared before the Honorable Magistrate Judge Deborah Robinson. Pretrial Services reported to the Court that defendant self-reported as suffering from Schizophrenia and Bi-Polar Disorder. At the initial appearance, the United States moved for the defendant's pretrial detention pursuant to 18 U.S.C. § 3142(f), which the Court granted. The Court scheduled a detention hearing for July 15, 2019. Pretrial detention is warranted in this case because it involves: (1) a crime of violence and offense listed in 18 U.S.C. § 2332b(g)(5)(B) (see 18 U.S.C. § 3142(f)(1)(A)); and (2) a serious risk that the defendant will flee (see 18 U.S.C. § 3142(f)(2)(A)).

## **Principles Governing Requests for Detention**

The Bail Reform Act lists four factors that guide the Court's pre-trial detention decision: (1) the nature and circumstances of the offense charged, (2) the weight of the evidence against the person, (3) the history and characteristics of the person, and (4) the nature and seriousness of the danger to any person or the community that would be posed by the person's release. *See* 18 U.S.C. § 3142(g). At a detention hearing, the government may present evidence by way of a proffer. *United States v. Smith*, 79 F.3d 1208, 1209-10 (D.C. Cir. 1996). When the government seeks to detain a defendant pursuant to 18 U.S.C. § 3142(f)(2)(A), the Court must find by clear and convincing evidence that there are no conditions or combinations of conditions that will assure the safety of the community or the defendant's presence at future court proceedings. *United States v. Peralta*, 849 F.2d 625, 626 (D.C. Cir. 1988). When the government seeks to detain a defendant on

---

[2]  Defendant also described that he thought that the individuals he was messaging on Twitter (*i.e.*, Chairman Pai, the CIA, Speaker Pelosi, and other Congressmen) were responding to him via ciphers. He also stated that he was not lying about the ciphers, but noted that was what he believed at the time of his messages on Twitter.

the ground that she is a risk of flight pursuant to 18 U.S.C. § 3142(f)(2)(A), the government must demonstrate Defendant's flight risk by a preponderance of the evidence. *United States v. Xulam*, 84 F.3d 441, 442 (D.C. Cir. 1996).

## No Condition or Combination of Conditions Will Reasonably Assure the Safety of Any Other Person and the Community, and the Defendant Is a Risk of Flight

**1. Nature and Circumstances of the Offense Charged**

The nature and circumstances of the offense charged in this case support detention. First, defendant issued threats that should be taken seriously. Defendant repeatedly threatened to kill police officers, including officers at the U.S. Capitol. Defendant's threats included his plan of how he would either stab or stun an officer, steal his gun, and then shoot individuals in the U.S. Capitol. Additionally, defendant more generally discussed killing white police officers in response to prior killings of African Americans. Defendant also repeatedly tweeted at the Chairman Pai and threatened to harm FCC employees.

It is notable that defendant had the means to effect the harm that he communicated in his messages. Defendant had a 7-inch bladed knife, hatchet, and a taser in his vehicle. Defendant had previously toured the Capitol, and thus knew the layout of the Capitol and its security. Defendant was in the vicinity of the Capitol when he made the threats, and was blocks away from the FCC headquarters.

Defendant intended his threats to be taken seriously, as true threats. He stated on Twitter that the threats were "real" and "not phony." Defendant had previously made threats to do harm, and had been warned by the FBI that the conduct was illegal. In his interview with USCP on July 10, 2019, defendant admitted that he knew that the threat he made regarding killing police officers was a direct threat toward a police officer and that it should be taken seriously.

2. **The Weight of Evidence Against Defendant**

The evidence against defendant is uncontroverted and supports detention. Defendant's statement corroborate all the evidence in the case. Defendant admitted to making the threats, to having the weapons in his vehicle, and to being in the District of Columbia when those threats were made. The fact that defendant stated he was trying to get attention by making the threats only shows that defendant knew the power of his words and that they would be taken seriously.

3. **The History and Characteristics of Defendant**

Defendant's history and characteristics also support pretrial detention. Defendant stated to Pretrial Services that he suffers from Schizophrenia and Bi-Polar Disorder. In his July 10, 2019, interview, defendant stated that he was manic at the time he made his threats. Defendant also described obsessive behavior directed at Chairman Pai and other public officials including the President, and that his threats were borne out of his frustration at these officials refusing to respond to him. Even at the close of his interview with USCP, defendant was asking to speak with Chairman Pai. Defendant's pattern of behavior shows that he does not have the ability to control his conduct and monitor his behavior. If defendant is released, the Court has little assurance that defendant will not reoffend.

Defendant's conduct is escalating, and will continue to do so. Defendant previously issued a threat to the FBI in February 2019, and was interviewed by the FBI and told that his conduct was illegal. Despite this warning, defendant on June 21 and 22, 2019, made approximately eight threatening communications, which he directed at numerous public Twitter accounts. Defendant's efforts were directed to a broad audience and were concerning not just law enforcement, but likely also those who observed his repeated threats on Twitter. Additionally, defendant's failure to heed

the warning of the FBI in February 2019 questions whether defendant is capable of following this Court's orders.

Defendant has no ties to the community. He drove from Arizona to Washington D.C., and has no fixed address in the District. Moreover, his past behavior indicates that he lacks the community support necessary to ensure his compliance with conditions of release.

4. **Danger to the Community**

Defendant's prior conduct and mental state show that he is a danger to the community. Defendant is obsessive about certain political figures and agencies, and believes he receives messages from them in ciphers. His behavior has escalated when he does not believe he is getting responses from this political figures, and will likely continue to do so when they do not respond in the future.

While defendant has not yet acted on his threats to injure and kill, he had on him at the time of his initial detention the tools he needed to effect a killing: a taser, hatchet, and large knife. Defendant has thought about and planned how he would commit a police killing, so as to use the weapons available to him to subdue a police officer and gain access to a firearm. Defendant drove to Washington, D.C. from Arizona, in order to be closer to the U.S. Capitol, the exact location where had imagined killing police officers, and toured the Capitol.

Defendant presents a danger to himself and others. His presence in the District with ample access to the political figures and agencies about which he is obsessed presents a real and significant danger to the community.

## Conclusion

The government submits that there is clear and convincing evidence that there are no conditions or combinations of conditions that will assure the safety of the community if defendant

is released or assure the defendant's presence at future court proceedings, and thus defendant should be held pursuant to 18 U.S.C. § 3142(f)(2)(A). Alternatively, a preponderance of the evidence shows that defendant is a risk of flight, and should be held pursuant to 18 U.S.C. § 3142(f)(2)(A). For the foregoing reasons, as well as those that will be set forth at a hearing on this matter, the government requests that the Court order the pre-trial detention of defendant.

Respectfully submitted,

JESSIE K. LIU
United States Attorney
D.C. Bar No. 472845

By:   /s/_____
KAREN P. W. SEIFERT
Assistant United States Attorney
National Security Section
U.S. Attorney's Office
NY Bar No. 4742342
Karen.Seifert@usdoj.gov